Opiniost op the Court.
Thomas Nelson, the plaintiff in error, brought this action of debt against^ the administrator and heirs of Thomas Chalfant, on a note or single bill executed by said Chalfant in his lifetime, on the 15th day of February 1818, to James Armstrong, and assigned by him to the plaintiff, for the sum of $1,900, payable on the first of March 1820. The administrator and heirs pleaded, that “ after the debt in the declaration mentioned became due, and before the commencement of this suit, the intestate paid the plaintiff the debt in the declaration mentioned, with all interest and charges then due. thereon, in full discharge of the debt in the plaintiff’s declaration mentioned.”
On the trial of the issue, the administrator and heirs gave in evidence a check for $800, drawn by the intestate on the Washington Branch Bank, in favor of the plaintiff; dated August 30th, 1820, and proved by the cashier of the bank, that this check had been presented-by the plaintiff, and discharged. The same witness deposed, that at and before that time, the intestate, Chal-fant, and James Armstrong, the obligee of the note now in controversy, were partners in trade, under the name and style of Armstrong and Chalfaht; and Armstrong, before and at the date of this check, had been protested, and remained discredited in bank, on account of his refusing to take up a note endorsed by him; and before that protest, the firm had had dealings with, and loans from the bank; but after the discredit of Armstrong, they ceased to do business in the name of the-firm, in bank; but Chalfant still deposited money there, and had an account in bank, with money to his credit, to a considerable amount above the sum paid; in dis-. charge of the aforesaid check. This was. all the evidence adduced in support of the issue, by the defen-, dants.
Armstrong, the partner of Chalfant and assignor of the obligation, being released from all responsibility on account of the assignment, was then introduced asp. wit- *167 lies,9 on the part of the plaintiff, who deposed, that one note of $1,033, made by Armstrong and Chalfant, dated-the 4th of November “!»819, payable, four months after date, to the plaintiff, was' found, at Chalfant’s death, among his papers, the name of the makers being torn off; also, was found, at the same time, another note, of $212* payable six months after date, dated the 18th of June 1819, payable to the plaintiff, made by the same persons, Armstrong and Chalfant, with the names of the makers likewise tom off.
The witness further stated, that some time before the date of the note for $1,033, he and the intestate entered into partnership in uie mercantile business, and each was by their agreement to furnish a certain amount of capital-, that*Chalfant,, the intestate, had calculated on borrowing a part 'of the'sum he was to furnish, from fhe bank’; but was .disappointed, and then prpposed to- the witness to borrow of 'the plaintiff. The witness declined obtaining the loan for the' partnership, not wanting to borrow him'self, - and not being satisfied with the interest demanded, which was ten per c€nt. per annum; but'he offered the intestate to join with him as surety.in a -note to the plaintiff, and ac-dbrdingly the note of $1,033* was given to the plaintiff for á loan, signed by their individual names. He further stated, that having succeeded very well in their first importation, he agreed to pay an equal proportion of the premium or interest to bé given for the use of the money. The Vitness also proved, .that the aforesaid small note was given to the plaintiff as a partnership transaction, and sighed by the firm, for $21-2, in the hand-writing of Chalfant. At the bottom‘of the. nofe for $1,033, were words ánd.figures, proved to be in .the hand-writing of the’intestate, as follows;
“ $>1,033 00.
51 50
1,084 50
12 00 other note.
1,096 50
Paid $1,100, the 30th August-
The inspection of this note for $1,033, as well as that for $212, showed that the signatures had been torn off, and by this tearing, was taken off the date of the year, *168 which was supposed to follow the words, “ 30th Au* gust.”
The same witness introduced the books of Armstrong and Chalfant, and on the Blotter were made eh tries in the hand-writing of Chalfant, the intestate, crediting the plaintiff, under date of September 1st, 1820, thus:
“ Note given up, $1,033 “ Interest, 67.”
Also, with a note given up, and some interest, making the two credits amount, together, to $1,300. Then the plaintiff was charged, under 'the saíne head and date, thus: ,
“ Cash, 200, per Robert.
“ Cash, self, this day, $1,100.”
The witness farther proved, that it was the practice of merchants to charge the checks drawn by them as cash; that Chalfant was aman of business, butbecame somewhat negligent in the latter part of his life about his book-keeping. He further stated, that from his knowledge of Chalfant’s business and money transactions, he was well convinced he could not have had individual funds, at the date of the aforesaid check, to that amount, or any considerable sum; and that he was then the partner of Chalfant, and understood from him that he kept tlie partnership funds in bank, in his individual name, in consequence, of the witness then doing no business there of. any kind.
This was all the evidence adduced, and the jury found a verdict for the debt in the specialty filed herein mentioned., subject fo the credit endorsed on the specialty, of $405 50, paid the '5th of June 18SI; and for $800, paid the 30th of August 1820. The plaintiff moved for a new trial, alleging the verdict to be against law and evidence. The court overruled this motion, and gave judgment according to the verdict, with interest until paid, subject to the aforesaid credits. To reverse this judgment, this writ of error is prosecuted by the plaintiff below; and the only error assigned is, “ That the court erred in not granting, but overruling the motion for a new trial.”
On the question of fact, there is proof of a payment on one side, and of other notes on the other side, to which it might Lave been applied. To which of them this payment was applied, or intended to apply, whether to the note iu suit, or the notes extinguished, are inqui- *169 licsfto be res'olved by circumstantial eyidénce. Were we triers of the facts, the inclination of our minds would be ip- favor of the plaintiff. But this is not enough; for it is á settled general rule, that where there is conflicting testimony, or evidence entitled to weight on each side, conducing to prove each way the litigated facts, the verdict ought not tobe disturbed, even by the court of original jurisdiction, who presides over, the trial. If this ought there"to,*he the governing principle, it ought to havé more forcé’in this court, who cannot have the opportunity of judging" of the evidence in its original shape. Here, the improbability is strong, that the $800 was not an additional payment, to be applied to the note in question. But still the payments applied to the notes extinguished, as presented at the bottom of one of these notes, and on the books of the decedent, introduced 'by-the pl&intiff, agreed with the contested payment neither in date nor amount; which would probably have been the case, with a man of such accuracy in business as the decedent appears to have been. Under this aspect of the evidence, leading the mind each way, wre incline to the opinion that the Court below did right in refusing a new trial. And as that court possessed advantages in scanning the testimony, which cannot hare, we concur with it, that the verdict not to have_been disturbed. '
As to the>erdict being rendered against the law of the cáse, there is no pretext, except by contending that under this plea of payment after the day to the whole demand, a partial payment could not support the issue. Without expressly deciding the question, whether such payment could or could not have been proved, and assuming, for the sake of argument, that it could not, it was still more properly an objection to the admissibility of the evidence, or rather the subject of a mol ion for proper instructions from the court below, after the evidence was heard, than ground for a new trial. Here, the •plaintiff made no objection to the admission of the de-fence under the issue, and asked for no instruction thereon ; but met the evidence by other proof and contended that the balance was in his favor; thus impliedly admitting its propriety, and waiving objections to its ad-' missibility, and now seeks that benefit on a motion for a new trial. Under such circumstances, we do not deem it to disturb the verdict, by extending our *170 decision to questions which he might have made at a ProPcr time, and saved by exceptions, if ruled against him; especially, as the admission of such defence accords, in some measure, with the practice of the country, and partial payments may in fact be tried in that way, with as much or more justice, and less expence to the parties litigant, than in any other mode.
The judgment of the court be low is, therefore, affirmed with costs.